## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| **JAMES EDWARD RICHARDS,** | : | |
| **individually and on behalf of all others** | : | |
| **similarly situated,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | |
| **v.** | : | **C.A. NO.  12-239 M** |
| | : | |
| **RBS CITIZENS, N.A. d/b/a CITIZENS** | : | |
| **BANK,** | : | |
| | : | |
| **Defendant.** | : | |

### DEFENDANT'S REPLY MEMORANDUM
### IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Defendant RBS Citizens, N.A. d/b/a Citizens Bank ("Citizens Bank") submits this Reply Memorandum in support of its motion to dismiss the complaint in this matter for failure to state a claim.  For the reasons set forth herein, the arguments in the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Complaint ("Plaintiff's Memorandum") do not provide any basis for allowing Plaintiff to proceed with his legally inadequate claims.

## I.    INTRODUCTION

Plaintiff James Edward Richards does not have a legally cognizable claim against Citizens Bank.  Citizens Bank demonstrated in its Memorandum of Law in Support of Defendant's Motion to Dismiss Complaint ("Citizens Bank's Memorandum") that Plaintiff's complaint merely sets forth allegations that Citizens Bank acted consistently with the rights granted to it by the Mortgage between Plaintiff and Citizens Bank.  Accordingly, none of Plaintiff's claims withstands the scrutiny of Citizens Bank's motion to dismiss.  Plaintiff's

Memorandum does not present any arguments that refute the reasons Citizens Bank provided to dismiss each one of Plaintiff's claims.  Instead, Plaintiff directs this Court to extraneous and immaterial issues and makes incorrect and conclusory arguments that ultimately are unpersuasive.

First, Plaintiff's claim for breach of contract fails because the contract language does not support the claim he has asserted, and his arguments to salvage it are unavailing.  Plaintiff points to the Notice of Special Flood Hazard ("NSFH") and suggests that it constitutes a contract between Plaintiff and Citizens Bank and that it undermines the plain language of the Mortgage granting Citizens Bank discretion to alter the amount of flood insurance it requires.  But the NSFH is not a contract (or part of the contract) between Citizens Bank and Plaintiff; rather, it is what it purports to be:  a notice that Plaintiff is required to maintain flood insurance.  Moreover, the language of the NSFH is not in any way inconsistent with the Bank's express contractual authorization to adjust the amount of flood insurance as provided for in the Mortgage.  Additionally, Plaintiff presents an erroneous analysis of (1) the contractual language in § 5 of the Mortgage, (2) the applicable law regarding the covenant of good faith and fair dealing, and (3) the applicable law regarding unconscionability.

Second, the allegations upon which Plaintiff relies in an attempt to support his unjust enrichment claim are insufficient as a matter of law.  Plaintiff erroneously contends that the complaint contains allegations sufficient to support a conclusion that Citizens Bank received some form of compensation from the flood insurer as a result of the force-placed flood insurance policies.  The allegations in the complaint in this regard, however, are conclusory and can not form the basis for Plaintiff's claims.  Similarly, the allegations that Citizens Bank backdated force-placed flood insurance policies are irrelevant.  Citizens Bank's actions to ensure that there

will be no gap in flood insurance coverage were reasonable and proper.  Plaintiff also incorrectly draws the conclusion that Citizens Bank's authorized actions in force-placing flood insurance precipitated Plaintiff's descent into foreclosure, and thereby were a benefit to itself.  But Citizens Bank acted in accord with its explicit rights under its Mortgage with Plaintiff.  Plaintiff's inability to fulfill his obligations under the Mortgage is not the fault of Citizens Bank.  Thus, Plaintiff cannot base his unjust enrichment claim on his own contractual breaches.  Moreover, he misconstrues and misapplies the case law he cites in an attempt to convince the Court that his unjust enrichment claim can survive.  Accordingly, Plaintiff's unjust enrichment claim fails as a matter of law.

Third, Plaintiff's attempts to thwart the clear legal principles articulated in Citizens Bank's Memorandum in support of its motion to dismiss are unconvincing.  The cases Plaintiff cites are not only distinguishable and inapposite, but also the legal analysis Plaintiff proffers is incomplete and illogical.

Plaintiff cannot escape the facts that:  (1) the Mortgage authorized Citizens Bank to alter the amount of flood insurance it required Plaintiff to maintain, and (2) Citizens Bank exercised that right in an objectively reasonable and appropriate manner to protect its interest in the collateral.  Citizens Bank took reasonable and contractually authorized actions in connection with the flood insurance coverage for Plaintiff's property.  Despite Plaintiff's bluster to the contrary, the allegations in the complaint do not state a sufficient factual basis to support any of his claims.  This Court, therefore, should dismiss all Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).

31495-152708
# 50824638

## II.     ARGUMENT

### A.     Count II of Plaintiff's complaint fails as a matter of law.

Count II of Plaintiff's complaint attempts to state a claim for "Breach of Contract/Breach of Implied Covenant of Good Faith and Fair Dealing/Unconscionability."  As Citizens Bank explained in its initial memorandum, the Court should dismiss Count II as a matter of law because Citizens Bank had a contractual right under the Mortgage to purchase a force-placed flood insurance policy for Plaintiff, and it acted in good faith when it did so.  Additionally, Citizens Bank clearly demonstrated that the terms of the Mortgage permitting Citizens Bank's force-placement of insurance are not unconscionable as a matter of law.  In response, Plaintiff (1) incorrectly relies on the NSFH as part of the Mortgage and erroneously argues that Citizens Bank breached its terms, (2) undertakes a faulty analysis of the terms of § 5 of the Mortgage, (3) performs a flawed analysis of the implied covenant of good faith and fair dealing, and (4) makes a failed argument that the Mortgage terms allowing Citizens Bank to change the loan's flood insurance requirements are unconscionable on their face.

> ### 1.     The Notice of Special Flood Hazards is (1) not a contract and (2) not inconsistent with Citizens Bank's right to adjust the amount of flood insurance it requires borrowers to maintain.

Plaintiff hinges much of his argument that Citizens Bank breached the Mortgage on the erroneous proposition that the Notice of Special Flood Hazard ("NSFH") provided to Plaintiff was either a separate contract between Plaintiff and Citizens Bank or part of the Mortgage contract.  Plaintiff then compounds that mistake by arguing that the language of the NSFH somehow conflicts with the express right provided to Citizens Bank in the Mortgage to adjust the amount of flood insurance that Citizens Bank required Plaintiff to maintain.  Plaintiff's reliance

31495-152708
# 50824638

on the NSFH as setting forth the maximum amount of flood insurance he must maintain for the life of the loan does not save Plaintiff's breach of contract claim from dismissal.[1]

### a.    The NSFH is not a contract and not a part of the Mortgage.

First, the NSFH is not a contract between Citizens Bank and the Plaintiff.  The document is titled "Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance."  The NSFH does not mention the Mortgage, and the Mortgage does not reference the NSFH.  Neither Plaintiff nor Citizens Bank signed the NSFH.  In fact, there is no place for a signature on the NSFH.[2]

Indeed, the bank makes no promises to Plaintiff in this document, and there are no indications that the NSFH was a document intended to set forth any obligations as between Plaintiff and Citizens Bank.  The first line of the NSFH states "We are giving you this **notice** to inform you that: . . ."  *See* NSFH (Exhibit 8 to Plaintiff's Memorandum) (emphasis added).  The content of the NSFH provides Plaintiff with information about (1) the flood risk for the property, (2) the right to seek a redetermination of flood risk from FEMA, (3) that federal law will not permit Citizens Bank to make the loan to Plaintiff without flood insurance, (4) the availability of

---

[1] Plaintiff makes much of the differences between the NSFH Citizens Bank attached as Exhibit A to its Motion to Dismiss and the NSFH attached as Exhibit 8 to Plaintiff's Memorandum.  The NSFH Citizens Bank attached to its motion to dismiss is the version that Citizens Bank has on file with Plaintiff's loan documentation.  For purposes of this motion to dismiss, Citizens Bank concedes that the Court should analyze the legal sufficiency of Plaintiff's complaint by reference to the NSFH attached as Exhibit 8 to Plaintiff's Memorandum.  Citizens Bank, however, expressly reserves the right to argue that the correct NSFH is the version it maintains in its files.  These differences are immaterial to the determination of the motion to dismiss because the NSFH does not set forth contractual terms between Citizens Bank and Plaintiff and because the terms of either version of the NSFH are not inconsistent with Citizens Bank's right to adjust its flood insurance requirement.

[2] The cases cited by Plaintiff for the proposition that the NSFH should become part of the Mortgage because Citizens Bank delivered it contemporaneously with the closing of the Mortgage are easily distinguished.  *See Mantua Mfg. Co. v. Commerce Exchange Bank*, 661 N.E.2d 161, 165 (Ohio 1996) (non-party to contract became a party by executing the document that authorized the underlying transaction); *Center Ridge Ganley, Inc. v. Stinn*, 511 N.E.2d 106, 108-109 (Ohio 1987) (multiple signed contracts where in one of the contracts the "very terms indicated that it was part of a larger transaction"); *Prudential Ins. Co. of Am. v. Corporate Circle, Ltd.*, 658 N.E.2d 1066, 1070 (Ohio App. 1995) (promissory note defined the term "Loan Documents" to include several documents, all of which were signed agreements).  Unlike in these cases, there is no express reference to the NSFH in the Mortgage or vice versa.  Additionally, all of these cases involved signed agreements, whereas the NSFH bears no signatures – or even a place for a signature – signifying assent.  Therefore, there is no basis in these cases to conclude that the NSFH and the Mortgage are part of a single contract.

flood insurance under the National Flood Insurance Program, and (5) the <u>minimum</u> amount of flood insurance Plaintiff must purchase.  *See id.*  (Emphasis added.)  The "Acknowledgment by Borrower" section at the bottom of the NSFH upon which Plaintiff relies for his argument that the NSFH creates a contract does not transform this federally required notice into a contractual document setting forth the terms and conditions of the agreement between Citizens Bank and Plaintiff.  There is no language in that section that indicates that Plaintiff made any promise to Citizens Bank in connection with the NSFH.  The NSFH is unambiguously a notice that merely informs Plaintiff of his obligation to maintain flood insurance in order to obtain the loan he sought.

> **b.**   **The terms of the NSFH are consistent with Citizens Bank's right to adjust the amount of flood insurance Citizens Bank required during the term of the loan.**

Second, even assuming that the NSFH became a part of the Mortgage, which it did not, the NSFH still does not support Plaintiff's breach of contract claim.  The language Plaintiff relies on in the NSFH is entirely consistent with the contract language in the Mortgage permitting Citizens Bank to adjust the amount of flood insurance it requires during the life of the loan.  The "Acknowledgment by Borrower" section, to the extent it imposes any contractual obligation on Plaintiff, requires Plaintiff "to furnish . . . receipt of premium paid **satisfying Lender's requirements** . . . ."  *See* NSFH (emphasis added).  The Mortgage language regarding flood insurance requirements clearly states that "[w]hat Lender requires . . . can change during the term of the Loan."  *See* Mortgage (Exhibit B to Citizens Bank's Memorandum) at § 5.  The language of the NSFH, in this regard, is clear.  It does not require Plaintiff to obtain the minimum levels of coverage described earlier in the document. Rather, it requires Plaintiff to obtain flood insurance that meets Citizens Bank's requirements.  Citizens Bank's requirements are set forth in the

Mortgage, and the Mortgage expressly informs Plaintiff that those requirements are subject to change.

Finally, even if this Court concludes that the NSFH established the Lender's requirements at the time of loan origination (which it does not), the language of the NSFH still does not collide with Citizens Bank's right to alter its flood insurance requirements at a later date.  The NSFH sets forth that Plaintiff must obtain flood insurance that covers "**at a minimum** . . . the outstanding principal balance of the loan; or . . .the maximum amount of coverage allowed . . . under the NFIP."  *See* NSFH (emphasis added).  Thus, the language of the NSFH clearly contemplates Plaintiff obtaining flood insurance in excess of that minimum.  Moreover, reading the document as a whole, the language purportedly requiring Plaintiff to "maintain such coverage until the loan is paid in full," can only mean that Plaintiff can never allow his flood insurance coverage to drop below that minimum level.  Indeed, the Bank can require Plaintiff to maintain that initial coverage until the loan is paid in full, and then require Plaintiff to obtain additional flood insurance as the mortgage allows it to do.  There is no language in the NSFH that prohibits Citizens Bank from adding its flood insurance requirements during the term of the loan.[3]

> **2.      Section 5 of the Mortgage clearly and unambiguously allows Citizens Bank to adjust its flood insurance requirements, and Citizens Bank properly exercised this right.**

The plain language of § 5 of the Mortgage permits Citizens to adjust its requirements for flood insurance on Plaintiff's property.  *See* Mortgage at § 5 ("***What Lender requires pursuant***

---

[3] Moreover, the NSFH does not contain specific terms regarding flood insurance requirements that should take precedence over the general terms of the Mortgage.  The NSFH does not set forth "specific flood insurance requirements."  Rather, it informs Plaintiff of the means by which Plaintiff can determine the minimum amount of flood insurance that federal law requires and tells Plaintiff that he must maintain flood as much flood insurance as "Lender" requires.  There is no specific statement of the amount of flood insurance Lender requires.  Accordingly, there is no basis to conclude that the NSFH, to the extent it is a document that sets forth any contractual requirements, is a specific provision that should govern over § 5 of the Mortgage.

***to the preceding sentences can change during the term of the Loan.***") (emphasis added).  In

*Hayes v. Wells Fargo Home Mortgage*, 2006 U.S. Dist. LEXIS 79769, *8-*9 (E.D. La. Oct. 31,

2006), the court expressly concluded that language identical to the language in Plaintiff's

mortgage unambiguously permitted the bank to increase its flood insurance requirements and

purchase force-placed flood insurance to account for that increase.  Plaintiff, however, asserts

two faulty premises to argue that Citizens Bank breached § 5 of the Mortgage when it decided to

require Plaintiff to maintain flood insurance for the replacement value of his home:  (1) that

Citizens Bank might only be a servicer of the loan and not the lender, and therefore did not have

the discretion to adjust the flood insurance requirements under the contract, and (2) that the flood

insurance coverage Citizens Bank purchased did not protect lender's interest in the property.

Both of these arguments fail.

   First, the suggestion that Citizens Bank might not be the "Lender" under the Mortgage is

completely baseless.  Plaintiff does not allege that anyone other than Citizens Bank is the lender.

Citizens Bank has not suggested that it is not the lender.[4]  Plaintiff is merely grasping at straws in

an attempt to escape the inevitable consequences of the clear contract language that authorizes

Citizens Bank to adjust Plaintiff's flood insurance requirements.  As the pleadings allege,

Citizens Bank is the "Lender" for Plaintiff's Mortgage, and therefore the Court should disregard

Plaintiff's hypothetical argument that Citizens Bank may have been a servicer of the loan

without the authority the Mortgage vests in the Lender.

---

[4] Citizens Bank is the "Lender" for Plaintiff's Mortgage.  Plaintiff, however, has no support for its baseless argument that because Citizens Bank *might* not be the "Lender" it *might* not have the authority to adjust the flood insurance requirements granted under § 5 of the Mortgage.  Plaintiff fails to cite any authority for the proposition that a servicer of the Mortgage would not be able to stand in the shoes of the lender for purposes of adjusting the flood insurance requirements.  Accordingly, Plaintiff's fanciful assertion that Citizens Bank might not be the "Lender" for the Mortgage is another example of a desperate argument in the hopes of finding some way to salvage his claims.

Second, Plaintiff completely misinterprets the language of § 5 of the Mortgage when he argues that Citizens Bank breached that section by purchasing a force-placed flood insurance policy to provide coverage for the replacement value of Plaintiff's home.  Plaintiff cherry picks the language "such coverage shall cover Lender" to support his argument, but completely ignores the context of that language.  The complete language from that section is:

> Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.

This language merely warns Plaintiff that Citizens Bank did not have an obligation to purchase flood insurance to protect Plaintiff's rights in his property.  It does not impose a limitation on how much flood insurance Citizens Bank could force place, and it did not prevent Citizens Bank from purchasing a force-place flood insurance policy that **would protect** Plaintiff's interest in the property.  As Citizens Bank explained in its initial memorandum, the purpose of requiring flood insurance coverage for the replacement value of borrower's homes is to allow the homes to be rebuilt in the event of a catastrophic flood.  This allows Citizens Bank to maintain its lending relationship with its borrower who can rebuild the home rather than merely pay off the mortgage debt, while being left homeless.  Accordingly, Citizens Bank did not breach any aspect of the Mortgage when it purchased the force-placed policy on Plaintiff's behalf.

### 3.  Citizens Bank did not breach the implied covenant of good faith and fair dealing as a matter of law.

Citizens Bank reasonably exercised its contractual discretion to adjust the amount of flood insurance it required Plaintiff to maintain.  Plaintiff claims that Citizens Bank's decision to exercise that discretion was outside his reasonable expectations.  Plaintiff, however, completely fails to explain why it would be unreasonable for him to expect an adjustment in the amount of

required flood insurance coverage when there is clear and unequivocal language in the Mortgage that states that Citizens Bank had the authority to change its flood insurance requirements.

In *LaCroix v. U.S. Bank, N.A.*, 2012 U.S. Dist. LEXIS 85494, *2 (D. Minn. June 20, 2012), the lender adjusted the borrower's flood insurance requirements on the strength of language in the mortgage requiring the borrower to maintain flood insurance "in the amounts and for the periods that Lender requires[.]"  The lender moved to dismiss Plaintiff's claims, including a claim for breach of contract and breach of the covenant of good faith and fair dealing.  *Id.* at *1.  The plaintiff contended that the bank acted in bad faith based on allegations that (1) the coverage in excess of the principal amount owed on the mortgage was worthless, (2) the force-placed policy was backdated, (3) the bank allegedly received kickbacks and (4) that the coverage the bank purchased was excessive.  *Id.* at *13-*17.  The court unequivocally rejected each of these arguments and found that (1) the coverage was not worthless, (2) "[b]ackdating policies . . . ensures that the property is continuously covered in the event that a loss occurs during a period of insufficient coverage" and such a practice is not in bad faith, (3) the allegations of kickbacks were conclusory and therefore insufficient to state a claim, and (4) the mortgage allowed the bank to adjust its flood insurance requirements and to require replacement cost coverage, and therefore the coverage was not excessive.  *Id.* at *8-*17.  Accordingly, the court dismissed all the plaintiff's claims, including the breach of contract claim, the breach of the covenant of good faith and fair dealing claim, the unjust enrichment claim, the breach of fiduciary duty claim, and the unfair trade practices act claim.  *Id.* at *23.  *See also Kolbe v. BAC Home Loans Servicing, L.P.*, 2011 U.S. Dist. LEXIS 92982, *13-*15 (D. Mass. Aug. 18, 2011) (dismissing the plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims because the

31495-152708
# 50824638

mortgage language allowed the bank to adjust its flood insurance requirements and because the reason the bank required replacement coverage was to comport with FEMA's recommendation).

The language in Plaintiff's Mortgage is even clearer than the language the courts construed in *LaCroix and Kolbe*.  Unlike those cases, Plaintiff's Mortgage explicitly states that Citizen's Bank's flood insurance requirements are subject to change during the life of the loan. The reasoning of the courts in *LaCroix* and *Kolbe* is sound.  Plaintiff's Mortgage authorizes Citizens Bank to change its flood insurance requirements and to require replacement value insurance, and there terms are reasonable, particularly in light of the FEMA recommendation suggesting that banks should require replacement value insurance.  *See* Federal Emergency Management Agency, *National Flood Insurance Program: Mandatory Purchase of Flood Insurance Guidelines* 27-28 (September 2007), available at http://www.fema.gov/library/viewRecord.do?id= 2954 ("A sound flood insurance risk management approach follows the insurance industry practice of insuring buildings to full [replacement cost value]. . . . By insuring buildings to the full [replacement cost value], the lender and borrower are both better protected.").  Accordingly, Plaintiff's argument that it could not reasonably have expected Citizens Bank to change Plaintiff's flood insurance requirements as it did should fail, and the Court should dismiss the claim for breach of the covenant of good faith and fair dealing.

### 4.  The Mortgage language allowing Citizens Bank to adjust its flood insurance requirements is not unconscionable.

Citizens Bank explained in its initial memorandum that the Mortgage language granting it the discretion to adjust its flood insurance requirements was not unconscionable for two reasons: (1) Plaintiff did not allege facts to support a finding of procedural unconscionability, and (2) that the language was not substantively unconscionable because the terms were not unfairly

oppressive.  Plaintiff responds by asserting additional facts not alleged in the complaint as to procedural unconscionability and arguing that the terms do not allow Plaintiff to predict the extent of future liability.  These arguments are meritless.

First, Plaintiff cannot rely on facts not alleged in the complaint to defeat a motion to dismiss.  *See*, *e.g.*, *MM Global Servs. v. Dow Chem. Co.*, 283 F. Supp. 2d 689, 705 (D. Conn. 2003) ("papers in response to a motion to dismiss cannot cure a defect in the pleadings").  Thus, Plaintiff's arguments about the procedural unconscionability of the Mortgage language are not properly before this Court.  Regardless, the term is not unconscionable because it is not oppressive and does not subject Plaintiff to unfair surprise.  Plaintiff cannot claim unfair surprise by a change in flood insurance requirements when the contractual language he agreed to explicitly contemplated and authorized such changes, and when the need to insure to the replacement value of the property is objectively reasonable.

**B.    The complaint does not state a claim for unjust enrichment.**

Citizens Bank explained in its initial memorandum that Plaintiff's unjust enrichment claim fails to state a claim because (1) Plaintiff did not confer a benefit on Citizens Bank, (2) an express contract governs the transaction, and (3) Plaintiff retained a benefit from the transaction. Plaintiff argues in response that the allegations of kickbacks paid to Citizens Bank and the backdating of the force-placed policy constitute a benefit conferred on Citizens Bank by Plaintiff.  Plaintiff also erroneously argues that he did not receive a benefit from the force-placed policy and that Citizens Bank's alleged bad faith actions take this case outside the usual prohibition on unjust enrichment claims based on a contractual relationship.  Each of these arguments fails.  For the reasons set forth below, the Court should reject these arguments.

1.    **Citizens Bank does not receive any compensation for force-placed insurance policies, and the complaint does not contain any non-conclusory factual allegations that, if proved, could support a finding that Citizen's Bank received any such compensation.**

Plaintiff supports an essential prong of his unjust enrichment claim in his conclusory allegation that Citizens Bank received kickbacks, commissions, or some other form of compensation in connection with purchasing force-placed flood insurance policies from ASIC. As Citizens Bank demonstrated in its initial memorandum, this bald conclusion is not entitled to the assumption of truth in connection with this Court's analysis of this motion to dismiss.  This Court should disregard such conclusory allegations in the absence of alleged facts that, if proved, would support the conclusion.  Plaintiff pleads no such alleged facts, and the arguments asserted in Plaintiff's memorandum do not lend any more credence to Plaintiff's conclusory allegations.

Plaintiff contends that it is a matter of public record that ASIC pays kickbacks to banks that purchase force-placed flood insurance policies from ASIC, and therefore this Court can take judicial notice of that alleged fact.  Plaintiff points to other court cases, newspaper stories, and testimony given in regulatory investigations in an attempt to support this position.  But all the documents Plaintiff references have one thing in common:  not one of them mentions Citizens Bank.

Findings by other courts that ASIC paid commission to **other banks** in connection with the purchase of force-placed flood insurance policies **does not** provide a basis for this Court to take judicial notice (or even to draw the inference) that ASIC paid any such consideration to Citizens Bank.  The numerous news stories and other documents discussing the money that ASIC paid in connection with forced-place flood insurance policies to **other banks** similarly provide no support for Plaintiff's conclusory allegation that Citizens Bank received "kickbacks" in exchange for purchasing force-placed insurance policies.  It is not permissible to infer that

13

Citizens Bank received compensation for purchasing force-placed insurance policies simply because other banks allegedly did so.

The reason those documents do not mention Citizens Bank is obvious.  Citizens Bank did not receive any kickback, commission, or any form of compensation from ASIC, or any other insurance company or flood tracking vendor, in connection with the sale of force-placed flood insurance.  Plaintiff's complaint does not even contain allegations, which, if proved, would refute this incontestable fact.  Plaintiff's conclusory allegation that Citizens Bank received some form of compensation in exchange for purchasing force-placed flood insurance policies from ASIC does not make it so.  *See LaCroix v. U.S. Bank, N.A.*, 2012 U.S. Dist. LEXIS 85494, *15-*17 (D. Minn. June 20, 2012) (granting motion to dismiss in a force-placed flood insurance class action and rejecting the conclusory allegation that the bank received kickbacks to support the plaintiffs claims when all the plaintiff could point to was articles highlighting kickbacks paid to other banks).

Moreover, Plaintiff does not allege any facts that support this conclusion.  In fact, Plaintiff cites paragraph 55 of the complaint for the proposition that "Defendant and ASIC negotiated the price for flood insurance policies that Defendant would force-place and the corresponding kickback to be paid to Defendant.  *See* Plaintiff's Memorandum at 8.  But, paragraph 55 of the complaint contains no such allegations.  *See* Complaint at ¶ 55.

Even to the extent that the Court could fairly read Plaintiff's complaint to allege that Citizens Bank received compensation from the sale of force-placed flood insurance policies, such allegations are demonstrably false by reference only to documents relied on by Plaintiff in the complaint and in Plaintiff's Memorandum.[5]  Plaintiff specifically asserts that "[t]he kickback

---

[5] The Court can properly consider documents fairly encompassed by the allegations made in the complaint and the arguments made by the plaintiff in opposition to a motion to dismiss when deciding a motion to dismiss.  *See*

was . . . provided pursuant to a contract between Defendant and . . . [ASIC]." *See* Plaintiff's

Memorandum at 8.  The contract between Citizens Bank and ASIC, however, conclusively

establishes that Citizens Bank did not contract for **any** compensation in connection with the

purchase of force-placed insurance policies.[6]

Plaintiff simply does not plead any factual basis to support a conclusion that Citizens

Bank received compensation from the purchase of force-placed flood insurance policies.

Accordingly, Plaintiff cannot rely on this allegation to sustain any of his claims.  In particular,

Plaintiff's claims for unjust enrichment, breach of the covenant of good faith and fair dealing and

breach of fiduciary duty hinge on the wholly unsupported and conclusory allegation that Citizens

Bank received kickbacks and cannot survive this motion to dismiss.

### 2. Citizens Bank acted prudently when it force-placed policies to ensure that there was no gap in flood insurance coverage.

Plaintiff raises a red herring when he alleges that Citizens Bank's "backdating" of flood

insurance policies was a breach of the covenant of good faith and fair dealing and unjustly

enriched Citizens Bank.  Citizens Bank's practices called for force-placed insurance policies to

begin on the date immediately following the expiration date of the previous policy.  There is no

legal prohibition on this practice, and Plaintiff does not even attempt to direct this Court's

attention to any legal citation suggesting otherwise.

The reason Citizens Bank must ensure that there is no gap in flood insurance coverage is

obvious.  Contrary to Plaintiff's fanciful assertion, it is objectively unreasonable for Citizens

Bank, or any lender, to monitor whether a flood event has occurred at all on the properties for

---

*Arteaga v. Potter*, 2011 U.S. Dist. LEXIS 32521, *2-*3 n.2 (D.R.I. Jan. 28, 2011) (the court may consider documents "central to the plaintiff's claim" when deciding a motion to dismiss).
[6] Citizens Bank submits a true and accurate copy of its contract with ASIC as Exhibit A to this memorandum.  That contract, however, is subject to a confidentiality order, and Citizens Bank filed a motion for leave to file it under seal contemporaneously with the filing of this motion.  Accordingly, Citizens Bank did not attach Exhibit A to this memorandum.

31495-152708
# 50824638

which it owns a security interest.  Ensuring that there are no flood insurance coverage gaps is the

only way that Citizens Bank could be certain that there was not an uncovered flood loss.

Plaintiff's allegations about "backdating" flood insurance policies are irrelevant and designed

only to create false outrage over a perfectly reasonable and legally permissible practice.  *See*

*LaCroix v. U.S. Bank, N.A.*, 2012 U.S. Dist. LEXIS 85494, *14 (D. Minn. June 20, 2012)

(granting a motion to dismiss a flood insurance class action and noting that "[b]ackdating

policies, however, ensures that the property is continuously covered in the event that a loss

occurs during a period of insufficient coverage").

> **3.      Plaintiff did not confer a benefit on Citizens Bank because there was
> no transaction between Plaintiff and Citizens Bank when Citizens
> Bank purchased the force-placed flood insurance policy.**

Plaintiff does not cure the defect in his allegations arising out of the fact that Plaintiff did

not confer a benefit on Citizens Bank.  As set forth, *infra*, the factual allegations that Citizens

realized a benefit by (1) receiving kickbacks, (2) "backdating" force-placed policies, and (3)

obtaining additional servicing revenue as a result of the force-placed policies do not withstand

scrutiny under the motion to dismiss standard and do not provide any support for Plaintiff's

claims.  Plaintiff simply did not confer a benefit on Citizens Bank.

Ohio law unequivocally requires that a plaintiff asserting an unjust enrichment claim

must allege that he conferred a direct benefit the defendant.  Plaintiff does not allege that he

conferred a direct benefit on Citizens Bank.  Plaintiff's allegations of kickbacks, "backdated"

insurance policies, and additional fees resulting from Plaintiff's failure to make required

payments do nothing to cure this fatal defect in Plaintiff's complaint.  Moreover, Plaintiff's

reliance on a single, distinguishable case applying the law of another jurisdiction does not

change the basic premise of unjust enrichment law that the plaintiff must directly confer a benefit

on the defendant in order to sustain such a claim.

Plaintiff relies on *Williams v. Wells Fargo Bank, N.A.*, Case No. 11-21233-CIV-ALTON

(Docket No. 103) (S.D. Fla. Oct. 14, 2011) for the proposition that an unjust enrichment claim

can survive even if a plaintiff does not confer a direct benefit on the defendant.  The *Williams*

court, however, declined to dismiss the plaintiff's unjust enrichment claim because it concluded

that the factual allegations by the *Williams* plaintiff stated that he "directly conferred a benefit on

Wells Fargo Bank."  *Id.* at 9.  Thus, despite Plaintiff's suggestion to the contrary, *Williams* does

not undermine the fundamental principle of Ohio unjust enrichment law that the Plaintiff must

directly confer a benefit on the defendant to sustain an unjust enrichment claim.  *See Johnson v.*

*Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005); *Pilgrim v. Universal Health Card, LLC*,

2010 U.S. Dist. LEXIS 9260, *11-*12 (N.D. Ohio Feb. 3, 2010).  *See also In re Whirlpool Corp.*

*Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 952-53 (N.D. Ohio 2009);

*William D. Mundinger Trust v. Zellers*, 2012 U.S. Dist. LEXIS 59736, *43-*46 (N.D. Ohio April

30, 2012).

Further, Plaintiff's argument that his complaint sets forth allegations of an "economic

transaction" between Plaintiff and Citizens Bank, and therefore establishes the requirement that

Plaintiff conferred a direct benefit on Citizens Bank, is faulty.  The purchase of the force-placed

insurance policy for Plaintiff is a transaction between Plaintiff and the insurer.  Citizens Bank

merely facilitates that transaction.  Citizens Bank does not receive a monetary benefit as a result

of that transaction.  Even if it did, however, it is the insurance company that provides that benefit

to Citizens Bank – not plaintiff.  Thus, Citizens Bank is not a party to the transaction by which

Plaintiff purchased force-placed insurance, and therefore Plaintiff does not allege that it directly

conferred a benefit on Citizens Bank.  Accordingly, the rule of Ohio law that a plaintiff must confer a direct benefit on a defendant to sustain an unjust enrichment claim is applicable and should result in dismissal of Plaintiff's unjust enrichment claim.[7]

>    **4.    Plaintiff's unjust enrichment claim fails because the Mortgage governs the transaction that gives rise to the claim.**

Plaintiff also fails to refute the fundamental legal principle that an unjust enrichment claim cannot survive when a contract governs the transaction that forms the basis for the claim. In fact, Plaintiff admits that the existence of a contract generally precludes an unjust enrichment claim.  *See* Plaintiff's Memorandum at 18.  Instead, he seeks to rely on an irrelevant exception to that general rule.

The case Plaintiff relied upon, *Dodson v. Maines*, 2012 Ohio App. LEXIS 2247 (Ohio App. Ct. June 8, 2012), is completely inapposite.  In that case, the Ohio Appeals Court upheld a trial court decision awarding unjust enrichment recovery to the plaintiff despite the trial court's finding of an oral contract regarding real estate.  *Id.* at *9-*15.  The court allowed unjust enrichment recovery because the court found that there was no express contract governing the transactions that formed the basis for the unjust enrichment theory of recovery and because the trial court found that the defendant acted with bad faith and malice.  *Id.* at *12-*15.  In this case, the Mortgage is clearly an enforceable express contract between Plaintiff and Citizens Bank

---

[7] Plaintiff fails to respond to Citizens Bank's argument that Plaintiff's unjust enrichment claim cannot survive because Plaintiff received a benefit from the transaction about which he now complains.  Plaintiff simply argues that he did not receive a benefit from the transaction and baldly states that "even if defendant is correct that Plaintiff cannot receive a benefit from the conduct that created the unjust enrichment claim – and Defendant is not correct . . . ."  *See* Plaintiff's Memorandum at 18.  Plaintiff provides no support for his bald assertion that the bank's position is incorrect.  Ohio law is clear – an unjust enrichment claim does not survive if the plaintiff retained a benefit in the transaction.  *Hughes v. Oberholtzer*, 123 N.E.2d 393, 397 (Ohio 1954); *Voting Solutions, Inc. v. Diebold, Inc.*, 2009 U.S. Dist. LEXIS 92221, *11 (N.D. Ohio Oct. 2, 2009) (citing *Chesnut v. Progressive Casualty Ins. Co.*, 850 N.E.2d 751, 758-59 (Ohio 2006)).  *See also City of Elyria v. York Int'l Corp.*, 2005 U.S. Dist. LEXIS 10889, *10 (N.D. Ohio June 7, 2005).  Plaintiff plainly received a benefit in the transaction for the purchase of the force-placed insurance in the form of the increased insurance coverage that would allow Plaintiff to rebuild his home if it was destroyed by a flood.  Accordingly, this Court should dismiss Plaintiff's unjust enrichment claim on this basis alone.

governing the transaction that forms the basis for Plaintiff's unjust enrichment claim. Additionally, Citizens Bank has demonstrated that the conclusory allegations that it required additional flood insurance to enrich itself are insufficient to support any claim, and therefore there is no basis to maintain the unjust enrichment claim on the basis of *Dodson*.[8]

Similarly, Plaintiff's reliance on *Williams* in support of the argument that this Court should permit Plaintiff to plead unjust enrichment in the alternative also is invalid.  The court in *Williams* stated that "unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid." *Williams* at 11.  The court then permitted the unjust enrichment claim because Wells Fargo Bank contended that "it may not be a party to the mortgage contracts." *Id.*  The reasoning of *Williams* and *Jones*, therefore, is inapplicable because there is no dispute in the case that the Mortgage is an enforceable contract. Accordingly, an alternative pleading for unjust enrichment is impermissible.

### C. Plaintiff failed to rebut Citizens Bank's arguments for dismissal of the claims for (1) breach of fiduciary duty, (2) conversion and (3) violation of the Ohio Consumer Sales Practices Act.

Citizens Bank set forth the basis for dismissal of each of Plaintiff's other claims for (1) breach of fiduciary duty, (2) conversion and (3) violation of the Ohio Consumer Sales Practices Act (the "Act").  Plaintiff responded by citing an inapposite case regarding fiduciary duty, and failing entirely to refute the arguments for dismissal of the claims for conversion and breach of the Act.

---

[8] The court in *Jones v. Jones*, 903 N.E.2d 329, 337 (Ohio Ct. App. 2008), also cited by Plaintiff, permitted an unjust enrichment claim only because it concluded that the governing separation agreement was no longer an enforceable contract once it merged into the divorce decree.

1.      **Citizens Bank is not a fiduciary to Plaintiff, and in any event did not breach any fiduciary duty to Plaintiff.**

Citizens Bank cited two cases that expressly held that a bank did not have a fiduciary duty to a borrower when using escrow funds to make payments for, among other things, insurance.  *See Cairns v. Ohio Savings Bank*, 672 N.E.2d 1058, 1062 (Ohio App. Ct. 1996); *Webb v. Chase Manhattan Mortgage Corporation*, 2007 U.S. Dist. LEXIS 15183, *3, *9 (S.D. Ohio March 5, 2007).  *Webb* directly rejected a claim for breach of fiduciary duty based on the use of escrow funds to pay for force-placed flood insurance premiums.  Plaintiff's only counter to these directly applicable cases is to argue that they do not create a *per se* rule against finding a fiduciary duty running from the bank to the borrower.

Plaintiff cites a completely inapposite case to attempt to create a fiduciary duty owed by Citizens Bank to Plaintiff.  *Stone v. Davis*, 419 N.E.2d 1094, 1098 (Ohio 1981), involved a case in which the plaintiff alleged that the bank breached a fiduciary duty in connection with giving advice as to whether the borrower should obtain mortgage insurance.  The court there held that the bank owed a fiduciary duty when providing advice about whether to purchase insurance.  *Id.*

Plaintiff does not allege facts in this case at all similar to the unique circumstance of *Stone* that created a fiduciary relationship where ordinarily one does not exist.  Plaintiff did not receive advice about insurance from Citizens Bank.  Rather, Citizens Bank exercised its contractual right to force-place a flood insurance policy for Plaintiff.  Plaintiff's fiduciary duty claim is based on his allegations that Citizens Bank mishandled his escrow funds when purchasing that policy.  This circumstance is almost identical to the facts in *Webb*, where the

court concluded no fiduciary duty existed between the bank and the borrower.  Accordingly, this

Court should dismiss Plaintiff's claim for breach of fiduciary duty.[9]

> ### 2. Plaintiff does not make any arguments that refute the reasons Citizens Bank set forth in its initial memorandum for dismissal of Plaintiff's claims for conversion and violation of the Act.

Citizens Bank previously explained that Plaintiff's conversion claim cannot survive the

motion to dismiss because the Mortgage authorized Citizens to pay force-placed flood insurance

premiums from Plaintiff's escrow funds.  Citizens Bank also set forth multiple legal bases that

preclude Plaintiff's claim for violation of the Act:  (1) the Act does not apply to the transaction

between Citizens Bank and Plaintiff, (2) Citizens Bank did not provide Plaintiff with any

misleading notices, (3) Citizens Bank's purchase of force-placed flood insurance for Plaintiff

was not unfair because the Mortgage authorized it, and (4) Plaintiff does not make any factual

allegations that support the conclusion that Citizens Bank force-placed flood insurance for the

purpose of sending Plaintiff into foreclosure.  Plaintiff does not seriously address any of these

arguments.

With respect to the conversion claim, Plaintiff does not contest Citizens Bank's assertion

that the claim fails if the Mortgage authorizes Citizens Bank to take the actions about which

Plaintiff complains.  Rather, Plaintiff simply reiterates its previous argument that Citizens Bank

did not have the right to purchase force-placed flood insurance for the replacement cost of

Plaintiff's home.  As demonstrated, *supra*, the Mortgage clearly authorizes this action.  The case

Plaintiff cites is inapposite.  In *Anderson v. Barclays Capital Real Estate, Inc.*, 2010 U.S. Dist.

LEXIS 68327, *8-*13 (W.D. Ohio June 18, 2010), the court concluded that the plaintiff stated a

claim for conversion when the loan servicer failed to apply mortgage payments as called for

---

[9] Regardless of whether a fiduciary duty exists, Citizens Bank acted in accordance with the terms of the Mortgage, and therefore did not breach a fiduciary duty.

31495-152708
# 50824638

under the terms of the mortgage.  That is clearly not the case here.  Citizens Bank applied all funds received from Plaintiff exactly as contemplated under the terms of the Mortgage.  Accordingly, Plaintiff has not demonstrated any basis to sustain his conversion claim, and this Court should dismiss that claim.

Plaintiff similarly fails to address the substance of Citizens Bank's arguments for dismissal of Plaintiff's claim for violation of the Act.  Plaintiff simply recites the allegations that he contends support his claim, but makes no counterarguments to those presented by Citizens Bank as to why those allegations are insufficient to state a claim.  Plaintiff's response to Citizens Bank's argument that the Act is inapplicable because Citizens Bank is a national banking association also is lacking.  Plaintiff cites to *Dowling v. Litton Loan Servicing, LP*, 2006 U.S. Dist. LEXIS 87098, *43-*44 (S.D. Ohio Dec. 1, 2006) for the proposition that loan servicing agents are subject to the Act.  That case is inapposite.  First, the defendant in *Dowling* conceded that it was not a financial institution subject to exemption from the Act, and merely argues that the exemption should extend to loan servicers.  *Id.*  Citizens Bank is unquestionably a financial institution and a national banking association, and therefore the reasoning of *Dowling* does not apply.  Accordingly, Plaintiff has not rebutted any of the arguments Citizens Bank made for dismissal of Plaintiff's claim for violation of the Act, and thus this Court should dismiss that claim.

> **D.     The negative consequences Plaintiff experienced because of the flood insurance requirements have no bearing on whether Citizens Bank had the contractual right to require Plaintiff to maintain additional flood insurance.**

Plaintiff attempts to bolster his claims by highlighting the inconsequential allegations in his complaint about his inability to make the increased payments that resulted from the increased

amount of flood insurance Citizens Bank required.  Plaintiff's inability to fulfill his contractual

obligations does not restrict Citizens Bank's ability to exercise its contractual rights.

The Mortgage unequivocally authorized Citizens Bank to adjust the amount of flood

insurance it required Plaintiff to maintain.  Citizens Bank exercised that contractual right.

Citizens Bank's decision to exercise that right provided Plaintiff with additional protection

against flood losses.  Plaintiff authorized Citizens Bank to adjust its flood insurance requirements

when he signed the Mortgage.  Plaintiff agreed to maintain flood insurance in the amount that

Citizens Bank required.  Plaintiff agreed to allow Citizens Bank to purchase a force-placed

policy on his behalf if Plaintiff did not obtain enough flood insurance on his own.  Plaintiff's

failure to pay the premiums for that insurance was a breach of Plaintiff's obligations under the

Mortgage.  Plaintiff seeks to blame his failure to fulfill his contractual obligations on Citizens

Bank.  But whatever unfortunate consequences may have befallen Plaintiff as a result of his

failure to fulfill his contractual duties do not transform perfectly legitimate and authorized

conduct under a contract into impermissible behavior.  Accordingly, these allegations provide no

support for any of Plaintiff's claims and do not save Plaintiff's complaint from dismissal.

> **E.**     **The cases that Plaintiff cites as examples of the Court denying motions to
> dismiss in cases involving force-placed flood insurance are easily
> distinguished and inapplicable.**

Plaintiff erroneously refers the Court to numerous cases regarding flood insurance in

which a court denied a motion to dismiss.  Plaintiff ignores, however, the many obvious

differences between those cases and Plaintiff's asserted claims.  Those cases are inapposite and

do not provide a basis for denying Citizens Bank's motion to dismiss.

The relevant facts in this case are as follows:  (1) the Mortgage language grants Citizens

Bank the express right to change the amount flood insurance it requires during the life of the

loan, (2) the Mortgage language grants Citizens Bank the right to purchase a force-placed flood insurance policy on behalf of Plaintiff if Plaintiff does not maintain the required amount of flood insurance, (3) the Mortgage authorizes Citizens Bank to pay premiums for force-placed flood insurance from Plaintiff's escrow account, (4) Citizens Bank does not receive kickbacks, commissions, or any other compensation from purchasing force-placed flood insurance, and (5) Citizens Bank changed its flood insurance requirements to comport with the FEMA recommendation for flood insurance.  *See* Federal Emergency Management Agency, *National Flood Insurance Program: Mandatory Purchase of Flood Insurance Guidelines* 27-28 (September 2007), available at http://www.fema.gov/library/viewRecord.do?id= 2954 ("A sound flood insurance risk management approach follows the insurance industry practice of insuring buildings to full [replacement cost value]. . . . By insuring buildings to the full [replacement cost value], the lender and borrower are both better protected.").  One or more of these facts distinguish this case from every case Plaintiff cites as an example of a court denying a motion to dismiss in cases regarding force-placed flood insurance.

First, in *McNeary-Calloway v. J.P. Morgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 59559 (N.D. Cal. March 26, 2012), the language of the mortgage contracts at issue was much less clear as to the bank's right to change flood insurance requirements.  In that case, the mortgage stated that the borrower must maintain flood insurance "in the amount and for the periods that Chase required."  *Id.* at *26.  In contrast, Plaintiff's Mortgage has express language authorizing the Citizens Bank to change the amount of flood insurance it requires during the life of the loan.

This same distinction also applies to *Skansgaard v. Bank of America, N.A.*, C.A. No. C11-988 RJB (W.D. Wash. Oct. 13, 2011) (slip op.).  The mortgage language in that case stated:

> Borrower shall insure all improvements on the Property . . . against any hazards,
> casualties, and contingencies, including fire, for which Lender requires
> insurance.  This insurance shall be maintained in the amounts and for the periods
> that Lender requires.  Borrower shall also insure all improvements on the
> property . . . against loss by floods to the extent required by the Secretary.

*Id.* at 4.  Again, Plaintiff's mortgage contains explicit language permitting Citizens Bank to change the amount of flood insurance during the term of the loan.  Also, the language in *Skansgaard* is identical to the language interpreted in *LaCroix* and *Kolbe*, in which the court found the language unambiguously permitted the bank to change the amount of flood insurance it required.  The reasoning of *LaCroix* and *Kolbe* is more thorough and sound, and this Court should follow those cases to the extent that it finds interpretation of that mortgage language applicable to its analysis of the language in this case.

In *Wulf v. Bank of America*, C.A. No. 10-5176 (E.D. Pa. April 15, 2011) (slip op.), the magistrate judge recommended denial of a motion to dismiss interpreting language identical to that in *Skansgaard*, *LaCroix* and *Kolbe*.  However, in adopting the report and recommendation, the District Court expressed reservations about whether the claim could survive in light of late-received argument that the bank changed its flood insurance requirements to conform to FEMA guidelines.  *Wulf v. Bank of America*, C.A. No. 10-5176 (E.D. Pa. June 27, 2011) (slip op.) at 3. The court reluctantly adopted the recommendation to deny the motion to dismiss because the bank did not raise the FEMA guideline issue until oral argument.  Thus, *Wulf* is distinguishable from this case both because the language in the Mortgage is more explicit and because the question of whether Citizens Bank should be allowed to follow FEMA guidelines is squarely before this Court.

The other cases Plaintiff cites are equally inapplicable.  *Pailes v. HSBC Mortgage Services*, 2011 U.S. Dist. LEXIS 77161 (D. Mass. July 18, 2011), involved a *pro se* plaintiff, and

the court did not perform any interpretation of the contract language.[10]  In *Abels v. JPMorgam Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1276 (S.D. Fla. 2009), the court hinged its decision to deny the motion to dismiss on the allegation that the bank purchased the force-placed policy from an affiliate; no such allegation exists in this case.  The claims in *Vician v. Wells Fargo Home Mortgage*, 2006 U.S. Dist. LEXIS 26141 (N.D. Ind. March 16, 2006), did not involve flood insurance and were predicated on a clause in the contract that prohibited force-placement under the circumstances present in the case.  No such language exists in Plaintiff's mortgage.

Ultimately, Plaintiff makes no meaningful argument in opposition to the motion to dismiss.  The facts of this case are clear.  Citizens Bank acted under the authority Plaintiff granted it in the Mortgage.  Citizens Bank gained no direct benefit by purchasing a force-placed flood insurance policy.  None of the case law Plaintiff cites supports the claims Plaintiff asserts under these circumstances.  Accordingly, this Court should grant the motion to dismiss in its entirety.

## III.   CONCLUSION

For the reasons set forth herein, as well as those set forth in Citizens Bank's Memorandum, this Court should (1) grant the motion to dismiss, and (2) enter judgment for Citizens Bank on all claims in the complaint.

---

[10] Moreover, *Pailes* pre-dates *Kolbe*, another District of Massachusetts case, in which the court concluded that language even less explicit than the language in Plaintiff's Mortgage unambiguously permitted the bank to change the amount of flood insurance it requires.

RBS CITIZENS, N.A. D/B/A CITIZENS BANK
**By its Attorneys,**


*/s/ Adam M. Ramos*
Robert G. Flanders, Jr. (# 1785)
Mitchell R. Edwards (# 6942)
Adam M. Ramos (# 7591)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI  02903
Telephone:  (401) 274-2000
Facsimile:   (401) 277-9600
rflanders@haslaw.com
medwards@haslaw.com
aramos@haslaw.com


DATED:  July 27, 2012

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2012, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF system.


*/s/ Adam M. Ramos*
Adam M. Ramos (# 7591)

31495-152708
# 50824638